UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-66-PEP

SHIRLEY A. MAYNARD,                                                                             PLAINTIFF,

V.                          **MEMORANDUM OPINION**
                                    **AND ORDER**

JO ANNE B. BARNHART,
Commissioner of Social Security,                                             DEFENDANT.

## I. INTRODUCTION

Plaintiff, Shirley A. Maynard, has brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Defendant Commissioner denying Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income. This matter has been referred to the undersigned for decision and entry of final judgment by virtue of the parties' consent pursuant to 28 U.S.C. § 636(c)(1). Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, Plaintiff's motion for summary judgment shall be denied, Defendant Commissioner's motion for summary judgment shall be granted, and Judgment shall be entered affirming the final decision of the Defendant

Commissioner.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her application for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2001. (Tr. 35, 59-60, 121.) The claim was denied initially and on reconsideration. (Tr. 36-39, 42-45.) At Plaintiff's request, an administrative hearing was conducted on January 24, 2003, by Administrative Law Judge James D. Kemper, Jr. (hereinafter "ALJ"), where Plaintiff testified, accompanied by her attorney. (Tr. 305-335.) Julie Morrissey, a vocational expert (hereinafter "VE"), also testified at the hearing. (Id.) On March 27, 2003, the ALJ found that Plaintiff was not disabled and therefore did not qualify for a period of disability, disability insurance benefits, or supplemental security income. (Tr. 10-22.) The Appeals Council declined to review the ALJ's decision (Tr. 4-6) and Plaintiff now seeks judicial review.

Plaintiff was forty-one years old at the time of the hearing decision. (Tr. 20.) Plaintiff's education is limited to the eighth grade (Tr. 307-308) and her past relevant work experience consists of employment as a cook, cashier clerk, and stock clerk. (Tr. 75, 308-312.) On March 27, 2003, the ALJ issued his decision finding Plaintiff not disabled. (Tr. 10-22.) At the outset, the ALJ found that Plaintiff met the disability insured status requirement for a period of disability and disability insurance benefits

under the Social Security Act, see generally 20 C.F.R. §§ 404.130-404.132, and was insured for benefits through March 30, 2004. (Tr. 21.) At the first step of the sequential evaluation process, see generally §§ 404.1520, 416.920, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since September 15, 2001, the alleged onset date of disability. (Tr. 21.) At the second step, the ALJ found that Plaintiff's lower back pain, seizure disorder, anxiety, and depression impairments were severe. (Id.) However, the ALJ concluded that Plaintiff's hypertension, gastroesophageal reflux disease, and chest pain impairments were non-severe. (Id.) At the third step, the ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal an impairment in the Listings, see generally 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 21.) At the fourth step, the ALJ found that Plaintiff is not capable of performing her past relevant work. (Tr. 22.)

At the fifth and final step, relying on the testimony of the VE and taking into consideration the Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC")[1], the ALJ found that

---

[1] The ALJ assessed the following RFC:

[Plaintiff] retains the . . . capacity for medium work. [Plaintiff] can frequently balance, stoop, kneel, crouch, crawl, but only occasionally climb ramps and stairs but never [climb] ladders, ropes, and/or scaffolds. Due to her seizures, [Plaintiff] should avoid all exposures to hazards (machinery, heights, etc.). Mentally . . . [Plaintiff] is moderately limited in her ability to understand and remember detailed instructions. Pertaining to sustained concentration and persistence, [Plaintiff] is moderately

3

Plaintiff was capable of making a successful adjustment to work existing in substantial numbers in the national economy.[2] (Tr. 20, 22.) Accordingly, the ALJ found Plaintiff not to be disabled at step five of the sequential evaluation process. See 20 C.F.R. §§ 404.1520(g), 416.920(g). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on February 10, 2005. (Tr. 4-6.) Plaintiff thereafter filed this action. By virtue of the parties' stipulations of consent (Record Nos. 3 and 8), this matter is before the undersigned for decision upon the parties' motions for summary judgment (Record Nos. 12 and 13), which are now ripe for review.

### III. ANALYSIS

#### A. General Standard of Review

---

    limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. Socially, [Plaintiff] is moderately limited in her ability to interact appropriately with the general public. In regard to adaptation, [Plaintiff] is moderately limited in her ability to respond appropriately to changes in the work setting and set realistic goals or make plans independent of others. [Plaintiff] is able to understand, remember and carry out simple tasks; adapt to work tasks and changes; and relate in an adequate manner.

(Tr. 19, 333.)

    [2] At the medium exertional level, the VE identified hand packer (approximately 120,000 jobs nationally and 8,000 regionally) and hotel/motel maid (370,000 nationally and 21,000 regionally) as jobs existing in significant numbers in the national economy that a person of Plaintiff's age, educational background, past relevant work experience, and assumed limitations could perform. (Tr. 333-334.) At the light exertional level, the VE identified process clerk (316,000 nationally and 18,000 regionally) and assembly worker (2,000,000 nationally and 65,000 regionally). (Tr. 334.) At the sedentary exertional level, the VE identified security or surveillance monitor (95,000 nationally and 9,500 regionally) and labeler (80,000 nationally and 3,000 to 4,000 regionally). (Id.)

The essential issue on appeal to this Court is whether the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence. 42 U.S.C. § 405(g); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991). Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461

U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

### B.  Plaintiff's Contention on Appeal and Analysis

Plaintiff's sole claim of error is that the ALJ based the RFC assessment on a non-examining report that was completed without the benefit of an MRI examination. On January 30 and February 5, 2002, Dr. James Ramsey, a State agency medical consultant, completed a physical RFC assessment based on the medical evidence available in the record. (Tr. 176-184.) Dr. Ramsey opined that the medical evidence established no exertional limitations. (Tr. 178.) In his decision, the ALJ stated that he adopted the opinion of Dr. Ramsey with regard to Plaintiff's physical RFC. (Tr. 19.) This statement is somewhat incongruent with the ALJ's earlier statement that due to Plaintiff's back pain, he adopted a more restrictive RFC limiting Plaintiff to activities no more arduous than medium work. (Id.)

The record also contains an MRI of Plaintiff's lumbar spine. (Tr. 252.) Dated February 6, 2003, this MRI was performed approximately one year after Dr. Ramsey issued his assessment of Plaintiff's RFC. It is clear, therefore, that Dr. Ramsey did

not consider, nor could he have considered, the lumbar spine MRI when assessing Plaintiff's RFC. The MRI revealed "[d]egenerative disk L4 through S1 and at least mild degree of central and posterior disk protrusion at L4-L5 and L5-S1 and also mild anterior spondylosis at [those] levels." (Id.)

An RFC is the assessment of the claimant's maximum remaining capacity to perform work related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see also Hickey-Haynes v. Barnhart, 2004 U.S. App. LEXIS 25567 at *20 (6th Cir. Dec. 1, 2004); Brown v. Comm'r of Soc. Sec., 2001 U.S. App. LEXIS 708 at *11 (6th Cir. Jan. 12, 2001). The Regulations provide that all relevant medical and non-medical evidence must be considered in the assessment of a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). An RFC assessment is adequate if it is supported by substantial evidence in the record. See Hickey-Haynes, 2004 U.S. App. Lexis 25567 at *2; Delgado v. Comm'r of Soc. Sec., 2002 U.S. App. LEXIS 3697 at *6-8 (6th Cir. Mar. 4, 2002).

Plaintiff argues that the RFC assessment is not supported by substantial evidence in the record because it was based on a non-examining opinion that did not consider a critical MRI examination relating to Plaintiff's back condition. In support of his argument, Plaintiff cites Pratts v. Chater, 94 F.3d 34, 38 (2nd Cir. 1996), which

held, in part, that a non-examining expert opinion on the basis of an incomplete medical record cannot constitute the substantial evidence necessary to affirm the decision of an ALJ.

Although Pratts is a decision from the Second Circuit and therefore, is only persuasive authority, the Court in Pratts did not, as Plaintiff suggests, reverse the administrative decision merely because the ALJ relied on expert testimony that did not have the benefit of later-obtained medical evidence. Rather, Pratts found that the ALJ, and subsequently the Appeals Council, did not fulfill their duty to develop the record because a substantial portion of the claimant's treatment reports were missing from the record. Id. Also missing from the record was a portion of the expert testimony actually relied upon by the ALJ. Id. at 37-38. The problem with the administrative decision in Pratts was the fact that a disability decision was made on the basis of an obviously incomplete medical record, not, as alleged in this case, that the ALJ relied on an expert opinion rendered without the benefit of later obtained medical evidence.

In contrast to Pratts, it is not claimed here that any of Plaintiff's medical records or any portion of the hearing transcript is missing from the record. Plaintiff's position is essentially that an expert opinion based on a review of the medical evidence available at the time cannot constitute substantial evidence in light of later obtained

8

evidence. If Plaintiff's position is accepted, it would lead to the untenable result that any expert review of the medical evidence would become useless as soon as new evidence is subsequently obtained.

The applicable Regulations provide that the initial responsibility of assessing a claimant's RFC rests with a State agency medical or psychological consultant. 20 C.F.R. §§ 404.1546(a), 416.946(a). At the ALJ level, although the ultimate responsibility of assessing a claimant's RFC falls on the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c), an opinion by a State agency consultant based on a review of the evidence in the claimant's record is listed as a type of evidence relevant to a disability determination, see 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6). In fact, because of their high qualifications and social security expertise, the Regulations provide that an ALJ "*must* consider findings of State agency medical and psychological consultants . . . as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416. 927(f)(2)(i) (emphasis added); see also SSR No. 96-6p, 1996 SSR LEXIS 3 (Soc. Sec. Admin. 1996).

Because most social security claimants undergo treatment or have physical or mental examinations for purposes of proving their disability claim, it is likely that new medical evidence will often be introduced into the record after an RFC assessment is made by a State agency consultant. The position that State agency consultants' RFC

9

assessments cannot serve as substantial evidence after new evidence is introduced is therefore inconsistent with the requirements of the Regulations as to their binding effect at the initial determination, as well as their function as evidence that must be considered at the ALJ level.

An underlying assumption in Plaintiff's argument is that the RFC assessment is faulty because it was based entirely on a State agency consultant's review of the record without the benefit of later obtained evidence. Essentially, the argument is that if the only evidentiary source of an RFC assessment is a medical record that becomes incomplete subsequently, it logically follows that the RFC assessment itself is also based on an incomplete record. Although the ALJ stated that he based the RFC assessment on the Dr. Ramsey's report, a comparison of the two assessments clearly demonstrates that the ALJ's RFC assessment was only partially based on Dr. Ramsey's report. With regard to the ability to balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, the two assessments are identical. (Tr. 19, 179.) However, with regard to exertional limitations, while Dr. Ramsey found none, the ALJ limited Plaintiff to activities no more arduous than medium work. (Tr. 19, 178.) The ALJ also deviated from Dr. Ramsey's opinion when he found that Plaintiff had a history of back pain and pointed to evidence, such as physical therapy treatment reports, to justify that limitation. (Tr. 14-15, 19, 238-

246.) In light of the significant departure that the ALJ's RFC assessment took from Dr. Ramsey's opinion, Plaintiff's contention that the RFC assessment was based entirely on Dr. Ramsey's report is simply not accurate.

Plaintiff further contends that the ALJ improperly acted as his own medical expert and thus incorrectly stated that there are "no MRI's . . . in the file indicative of any disabling back impairment, and there is no evidence of herniation." (Tr. 18.) Plaintiff asserts that this statement is incorrect because of the findings on the MRI of Plaintiff's lumbar spine revealing "[d]egenerative disk L4 through S1 and at least mild degree of central and posterior disk protrusion at L4-L5 and L5-S1 and also mild anterior spondylosis at [those] levels." (Tr. 252.) Plaintiff argues that to the extent that the ALJ considered the MRI examination and concluded that it was not indicative of disabling back pain or herniation, the ALJ erred by acting as his own medical expert.

Contrary to Plaintiff's argument, the ALJ was not acting as his own medical expert. The MRI report says nothing about pain, much less disabling pain, and thus, as the ALJ stated, it was "not indicative of any disabling back impairment." (Tr. 18.) As to disk herniation, Plaintiff apparently considers the statement in the MRI report of a "mild degree of . . . disk protrusion" to be the same thing as disk herniation, which is incorrect. A disk herniation occurs when the nucleus pulposus pushes against

11

the fibrous ring around the disk to the extent that the ring is broken open and part of the nucleus pulposus is actually extruded beyond the disk, often pushing against nerve fibers and thereby causing pain. On the other hand, a disk protrusion occurs when that fibrous ring has been impacted by the nucleus pulposus, creating a bulge discernible on an MRI, but the fibrous ring is still intact. These are facts so well known to any experienced litigator of personal injury cases, such as the undersigned, or an experienced Social Security ALJ, such as in this case, that no citation to medical authority in support is necessary.

Thus, the ALJ's statement that there was no evidence in this case of any disk herniation was correct; the MRI report merely reported a disk bulge, not any herniation. More importantly, the MRI report, standing alone, says nothing about any impairment of function. Therefore, the ALJ did not, contrary to Plaintiff's assertions, make any error in his review of the medical evidence.

While an ALJ must consider medical evidence and expert opinions in the record, 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), the Regulations provide that the final responsibility of determining a claimant's RFC rests with the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c). There is no requirement, contrary to Plaintiff's assertion, that the ALJ seek expert opinion to explain the impact of test results in the record.

The case cited by Plaintiff in support, Green v. Apfel, 204 F.3d 780 (7th Cir.

2000), is quite distinguishable. In Green, the Seventh Circuit reversed the denial of benefits by an ALJ and remanded with instructions that a physician examine the claimant or his records to determine whether a disability existed. Id. at 782. The Court noted that the ALJ rejected the claimant's complaints of pain and failed to consider the aggregate effect of claimant's ailments. Id. at 781-82. The Court concluded that the ALJ failed to build a bridge from the evidence to his conclusions because his analysis did not provide a rational basis for the denial of benefits. Id. at 781.

Unlike the ALJ in Green, the ALJ here did engage in a detailed analysis of the testimony and medical evidence in the record to determine whether Plaintiff was disabled. Also, it should be noted that the Seventh Circuit employs a more stringent standard of review than the Sixth Circuit and thus, Green is essentially irrelevant to the legal standards this Court must apply in its review. See Hickman v. Apfel, 187 F.3d 683, 689 (7th Cir. 1999); Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998).

Even if it were assumed, for the sake of analysis only, that the ALJ did, as Plaintiff contends, misread the MRI report, that fact alone would not require reversal and remand of the ALJ's decision so long as there is substantial evidence of record that supports the ALJ's decision finding Plaintiff not disabled. See Grecol v. Halter, 2002 U.S. App. LEXIS 18156 at *10 (6th Cir. Aug. 29, 2002) ("[i]n spite of the ALJ's

misstatements of [claimant's] reported activity levels . . . there still exists some substantial evidence to support the ALJ's factual determinations regarding [claimant's] condition and his physical limitations); Walton v. Comm'r Soc. Sec., 2003 U.S. App. LEXIS 7066 at *26 (6th Cir. Apr. 11, 2003) ("even if the magistrate judge improperly found that [claimant] was not prescribed a TENS unit . . . such finding is not dispositive of the issue at hand-whether substantial evidence on the record supports the ALJ's decision").

In this case, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record. A medical report dated December 9, 2002, indicated that a straight leg raising test was negative for sciatica. (Tr. 240.) The report also noted that while Plaintiff walked with a limp, she was able to ambulate without an assistive device. (Id.) Plaintiff exhibited only moderate tightness in her hamstring muscle and only mild tightness in her quadriceps. (Id.)

Furthermore, the record contains Plaintiff's testimony with regard to her daily activities. (Tr. 324-327.) While Plaintiff's lifestyle cannot be fairly described as active, Plaintiff is sufficiently active to cast some doubt over her allegations of disabling pain. The record also contains Dr. Ramsey's RFC assessment, which placed no exertional limitations on Plaintiff's ability to perform work activities. (Tr. 176-184.)

14

In sum, when viewed in its entirety, the record contains substantial evidence to support the ALJ's assessment of Plaintiff's RFC. The fact that some of the evidence in the record, such as the lumbar spine MRI, might support a different RFC assessment is insufficient grounds for reversal. See Casey, 987 F.2d at 1233; Her, 203 F.3d at 389-90.

## IV.  CONCLUSION

Therefore, for the reasons set forth above,

IT IS ORDERED HEREIN AS FOLLOWS:

(1) The Defendant Commissioner's motion for summary judgment (Record No. 13) is hereby GRANTED.

(2)  Plaintiff's motion for summary judgment (Record No. 12) is hereby DENIED.

(3)  Judgment be entered affirming the Commissioner's decision, dismissing this action with prejudice, and directing that this action be stricken from the court's docket.

Signed November 18, 2005.



Signed By:
Peggy E. Patterson  PEP
United States Magistrate Judge

Date of Entry and Service: